**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (LR 5733)
lrosen@rosenlegal.com
Timothy W. Brown, Esq. (TB 1008)
tbrown@rosenlegal.com
Phillip Kim, Esq. (PK 9384)
pkim@rosenlegal.com
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827

Lead Counsel for Plaintiffs

RECEIVED
JUN 14 2013
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE POSEIDON CONCEPTS SECURITIES LITIGATION | Case No: 13-CV-1213 (DLC)<br>ECF CASE<br>CLASS ACTION<br>**JURY TRIAL DEMANDED** |

**CONSOLIDATED AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

1. Court-appointed Lead Plaintiff Gerald Kolar ("Plaintiff"), by his undersigned attorney, for his consolidated amended complaint ("Complaint") against Defendants alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, wire and press releases published by and regarding Poseidon Concepts Corp. ("Poseidon" or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

2. This is a federal securities class action brought on behalf of a class consisting of all persons and entities, other than Defendants and their affiliates, who purchased the publicly traded common stock of Poseidon from May 9, 2012 to February 14, 2013, inclusive (the "Class Period") seeking to recover damages caused by Defendants' violations of federal securities laws.

3. Poseidon, a Canadian corporation, adopted an "exponential growth" business strategy to establish itself in the North American market since its inception on November 1, 2011. By means of press releases, public filings with the System for Electronic Document Analysis and Retrieval of the Canadian Securities Administrators ("SEDAR") and other statements they provided to U.S. investors, Poseidon and the Individual Defendants created the false image of a highly profitable and rapidly expanding public company. Within less than a year, however, the truth that Poseidon was a failure was revealed.

4. In its quarterly and annual financial statements filed with SEDAR, Poseidon reported that it earned the following amount of revenue during the first three quarters of fiscal year 2012:

Q1 2012: C$52.1 million;[1]

Q2 2012: C$55 million; and

Q3 2012: C$41 million.

5. Through several corrective disclosures, first on November 14, 2012, and last on February 14, 2013, Poseidon revealed the truth that disclosed the material falsity of its financial statements.

6. Poseidon issued a press on February 14, 2013 stating that it never actually earned the vast majority of the revenue it recognized during the first three quarters of 2012. That press released stated in pertinent part:

> approximately $95 million to $106 million (subject to detailed quantification by the Company) of the Company's $148.1 million in revenue for the 9 months ended September 30, 2012 should not have been recorded as revenue in the Company’s financial statements; and
>
> as a result of recording the foregoing revenues, approximately $94 million to $102 million (subject to detailed quantification by the Company) of the Company’s $125.5 million accounts receivable as at September 30, 2012 should not have been recorded in the Company’s financial statements as accounts receivable.

7. Poseidon's February 14, 2013 press release also announced that "the first, second and third quarter 2012 financial statements ... will be restated and the Company advises investors that they should no longer rely on the Financial Statements as well as the corresponding Management’s Discussion & Analysis. Further, the Company advises that all previous guidance with respect to the Company’s business should no longer be relied upon."

---

[1] The exchange rate is approximately as follows: US$1 = C$1.02.

8. The corrective disclosures, beginning on November 14, 2013, and ending on February 14, 2013, caused the price per share of Poseidon's common stock to drop $12.82 to $0.28.

9. Defendants' blatant misrepresentations caused investors that purchased Poseidon common stock during the Class Period to suffer an immediate and substantial loss on their investment.

10. On April 9, 2013, Poseidon and its affiliates applied for and received an order for protection pursuant to the Companies' Creditors Arrangement Act ("CCAA"), R.S.C.1985, c.C-36 from the Court of Queen's Bench of Alberta, Calgary Division, which includes, among other things, a stay of proceedings against them, approval of a sales process for them and the appointment of PricewaterhouseCoopers Inc. as monitor of them.

11. On April 26, 2013, United States Bankruptcy Court District of Colorado issued a preliminary injunction order against any one commencing or continuing any legal proceeding against the Company.

## JURISDICTION AND VENUE

12. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

13. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

14. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred in this District.

15. In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

16. Court-appointed Lead Plaintiff Gerald Kolar purchased Poseidon stock at artificially inflated prices during the Class Period and has been damaged thereby. His PSLRA certification has previously been filed with the Court and is incorporated herein by reference.

17. Defendant Poseidon is a Canadian Corporation whose principal place of business is Calgary, Alberta, Canada.

18. From 80% to 94% of Poseidon's revenue was U.S.-based, and the remainder was Canada-based.

19. Poseidon became a successor of Open Range Energy Corp. after it was reorganized on November 1, 2011, pursuant to the Business Corporations Act (Alberta), RSA 2000, c B-9, as amended.

20. Poseidon engages in the development and commercialization of fluid storage and solutions to the oil and gas industry across North America, especially in the United States.

21. Poseidon was at all relevant times a reporting issuer in all provinces of Canada. As a reporting issuer in each of the provinces of Canada, Poseidon was required to issue and file with SEDAR quarterly financial statements and audited annual financial statements prepared in accord with the International Financial Reporting Standards ("IFRS"). At the same time as it filed the quarterly and audited annual financial statements, Poseidon was required to file with

SEDAR Management's Discussion and Analysis of the respective financial statements ("MD&A").

22. Throughout the Class Period, Poseidon's common stock was listed on the OTC Pink Sheets under ticker symbol "POOSF" and the Toronto Stock Exchange under ticker symbol "PSN."

23. Defendant Lyle D. Michaluk ("Michaluk") is a founding member of the Company. Since November 1, 2011, Michaluk served as the Company's Chief Executive Officer ("CEO") and Director. Michaluk was replaced by Dawson as the Company's Chief Executive Officer and appointed Interim Chief Financial Officer ("CFO") of the Company on December 27, 2012. Prior to November 1, 2011, Michaluk was Open Range's CFO and Vice-President.

24. Michaluk signed and/or certified the false and misleading financial statements and accompanying MD&As for Q1 - Q3 2012.

25. Defendant Matt C. MacKenzie ("MacKenzie") served as the Company's Chief Financial Officer from November 1, 2011 until he was replaced by Michaluk on December 27, 2012.

26. MacKenzie signed and/or certified the false and misleading financial statements and accompanying MD&As for Q1 - Q3 2012.

27. Defendant A. Scott Dawson ("Dawson") is a founding member of the Company He served as Poseidon's Chairman of the Board of Directors since November 1, 2011. He was also a member of its Audit Committee. Dawson was appointed Executive Chairman of the Company on November 19, 2012. He was appointed Interim President and CEO on December 27, 2012. Prior to November 1, 2011, Dawson was Open Range's CEO, President, and Director.

28. Defendant Clifford L. Wiebe ("Wiebe") is a founding member of the Company. Since November 1, 2011, Wiebe served as the Company's President, Chief Operating Officer and Director until December 27, 2012. Wiebe was replaced by Dawson as the Company's President, Chief Operating Officer and Director, and was appointed Chief Technology Officer of the Company on December 27, 2012.

29. Defendant Harley L. Winger ("Winger") is a founding member of the Company and at all relevant times herein served as a Company Director. Prior to November 1, 2011, Winger was Open Range's Director.

30. Defendant Dean R. Jensen ("Jensen") is a founding member of the Company and at all relevant times herein served as a Company Director and Chairman of its Audit Committee.

31. Defendant Neil Richardson ("Richardson") served as a Company Director at all relevant times herein.

32. Defendant Jim S. McKee ("McKee") served as a Company Director from November 1, 2012 until his sudden resignation in December 2012. During his brief tenure, he was a member of the Company's Audit Committee.

33. Dawson, Michaluk, Wiebe, Winger, Jensen, MacKenzie, Richardson and McKee are collectively referred to herein as the "Individual Defendants."

34. Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's stock financing plans via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them.

35. As officers, directors and controlling persons of a publicly-held company whose securities were traded on the OTC Pink Sheets and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

## DEFENDANTS' MISCONDUCT

36. The Class Period begins on May 9, 2012, when Poseidon published a materially false and misleading press release announcing the financial and operating results for Q1 2012; the period ended March 31, 2012. For the quarter, the Company reported revenue of C$52.129 million and a net income of C$29.639 million.

37. On May 9, 2012, Poseidon filed with SEDAR its financial statements for Q1 2012 and its Q1 2012 MD&A. Poseidon's May 9, 2012 SEDAR filings reported revenue of C$52.129 million and a net income of C$29.639 million for Q1 2012. The May 9, 2012 SEDAR filings reported accounts receivable as of March 31, 2012 in the amount of C$83.018 million.

38. Michaluk and MacKenzie signed and/or certified the false and misleading financial statements and accompanying MD&As for Q1 2012.

39. On August 8, 2012, Poseidon published a materially false and misleading press release announcing the financial and operating results for Q2 2012; the period ended June 30,

2012. For the quarter, the Company reported revenue of C$54.875 million and a net income of C$31.183 million.

40. On August 8, 2012, Poseidon filed with SEDAR its financial statements for Q2 2012 and its Q2 2012 MD&A. Poseidon's August 8, 2012 SEDAR filings reported revenue of C$54.875 million and a net income of C$31.183 million for Q2 2012. The August 8, 2012 SEDAR filings reported accounts receivable as of June 30, 2012 in the amount of C$118,641 million.

41. Michaluk and MacKenzie signed and/or certified the false and misleading financial statements and accompanying MD&As for Q2 2012.

42. On November 14, 2012, Poseidon published a materially false and misleading press release announcing the financial and operating results for Q3 2012; the period ended September 30, 2012. For the quarter, the Company reported revenue of C$41.116 million.

43. On November 14, 2012, Poseidon filed with SEDAR its financial statements for Q3 2012 and its Q3 2012 MD&A. Poseidon's November 14, 2012 SEDAR filings reported revenue of C$41.116 million and a net income of C$7.832 million for Q3 2012. The November 14, 2012 SEDAR filings reported accounts receivable as of September 30, 2012 in the amount of C$125.516 million.

44. Michaluk and MacKenzie signed and/or certified the false and misleading financial statements and accompanying MD&As for Q3 2012.

45. The press releases issued on, and SEDAR filings filed on, May 9, 2012, August 8, 2012, and November 14, 2012, respectively were each materially false and misleading because, as the Company announced on February 14, 2013:

> approximately $95 million to $106 million (subject to detailed quantification by the Company) of the Company's $148.1 million in revenue for the 9

months ended September 30, 2012 should not have been recorded as revenue in the Company's financial statements; and

as a result of recording the foregoing revenues, approximately $94 million to $102 million (subject to detailed quantification by the Company) of the Company's $125.5 million accounts receivable as at September 30, 2012 should not have been recorded in the Company's financial statements as accounts receivable.

46. Indeed, the Company announced on February 14, 2013 that its financial statements for Q1 - Q3 2012 will be restated.

**Dawson, Michaluk and Winger Sell Poseidon Securities**

47. While the market price of Poseidon's shares was grossly inflated by the misrepresentations alleged herein, the Defendants Dawson, Michaluk and Winger sold securities in the public market. In particular:

(a) on November 14, 2011, Winger sold a total of 238,464 Poseidon shares indirectly held in the public market for gross proceeds of C$2.64 million;

(b) on November 14, 2011, Winger sold a total of 75,523 Poseidon shares directly held in the public market for gross proceeds of approximately C$860,000;

(c) on November 14, 2011, Dawson sold 1,000,000 Poseidon shares indirectly held through CIBC Wood Gundy in the public market for gross proceeds of C$11 million;

(d) on November 14, 2011, Michaluk sold 675,000 Poseidon shares indirectly held through CIBC Wood Gundy in the public market for gross proceeds of C$7.46 million;

(e) on February 9, 2012, Winger sold 30,000 Poseidon shares indirectly held through CIBC Wood Gundy in the public market for gross proceeds of C$480,000;

(f) on February 9, 2012, Winger sold 30,000 Poseidon Concepts shares directly held in the public market for gross proceeds of $486,000; and

(g) on February 27, 2012, Dawson sold a total of 400,032 Poseidon Concepts shares directly held in the public market for gross proceeds of $6.36 million.

**THE TRUTH CONCEALED BY DEFENDANTS' MISCONDUCT IS REVEALED, CAUSING INVESTORS' LOSSES**

48. On November 14, 2012, Poseidon Concepts shocked the market by releasing the results from its Q3 2012 operations, announcing, among other things, that it was:

(a) taking a charge of C$9.5 million for uncollectible debt, reducing its AR position and taking a charge to its net income and reported assets;

(b) significantly increasing in the size of its AR portfolio to C$125.5 million (net of the C$9.5 million write-off), including C$36 million past due (outstanding for more than 120 days);

(c) disclosing for the first time that its internal controls over financial reporting were not completely effective";

(d) introducing a new credit policy to mitigate the problems with doubtful receivables: "The Corporation has established a credit policy under which each customer is analyzed for creditworthiness before the Corporation begins to provide services to the customer and prior to offering standard payment terms and conditions. Credit limits are established for each customer, which represents the maximum exposure. The Corporation's credit limit review includes customer cash flow analysis, external debt ratings, and credit references when appropriate. Customers that fail to meet the Corporation's benchmark creditworthiness may

transact with the Corporation only after providing a cash deposit to offset a portion of the credit amount; these customers will be subject to an added level of monitoring by the Corporation until sufficient payment history is established"; and

(e) disclosing that only 38% of its AR portfolio was due from investment grade parties.

49. In response to the Company's disclosure on November 14, 2012, the Company's stock fell $8.15 per share or approximately 62%, from its previous closing price, to close at $4.95 per share on November 15, 2012.

50. On November 19, 2012, Poseidon issued a press release announcing a change in management with the appointment of Dawson as the Executive Chairman of the Company, whose role is to act as a liaison between the Board of Directors and management.

51. On November 28, 2012, the Toronto law firm Siskinds LLP announced it had filed a class-action lawsuit in the Ontario Superior Court of Justice against Poseidon and certain of its officers and directors, alleging Poseidon made materially false and misleading statements regarding its financial conditions, especially the overstatement of revenue and overstatement of accounts receivables during Q4 2011 through Q3 2012, and false and misleading disclosures concerning its compliance with IFRS and its own accounting policies.

52. On the same day, analysts at BMO Capital Markets Corp. and Haywood Securities Inc. downgraded their outlook of Poseidon's shares trading on the Toronto Stock Exchange.

53. As a result, the Company's stock fell $1.28 or approximately 24%, from its previous closing price, to close at $4.07 per share on November 28, 2012.

54. On December 27, 2012, Poseidon issued a press release announcing the formation of a Special Committee to evaluate and resolve various issues stemming from the Company's write-off of some of its accounts receivable and evolving business strategy, and stating in relevant part:

> the Company may need to make additional write downs of accounts receivable in future periods and such write downs may be significant.

55. On the same press release, the Company disclosed additional changes to its management and stated in relevant part:

> effective immediately Mr. A. Scott Dawson will assume the role of Interim President and Chief Executive Officer, Mr. Michaluk will assume the role of Interim Chief Financial Officer and Mr. Wiebe will assume the role of Chief Technology Officer. Messrs. James McKee, Lyle Michaluk and Cliff Wiebe have resigned from the Board of Directors.

56. In light of the Company's disclosures on December 27, 2012, the Company's stock fell $1.87 per share or approximately 56%, from its previous closing price, to close at $1.49.

57. The following day, analysts at First Energy Capital Corp. and Haywood Securities Inc. downgraded their outlook of Poseidon's shares trading on the Toronto Stock Exchange.

58. In response, the Company's stock fell another $.20 or approximately 13%, from its previous closing price, to close at $1.29 per share on December 28, 2012.

59. On February 14, 2013, Poseidon issued a press release announcing the findings of the Special Committee and stated in relevant part:

> Based on the recommendation of the Special Committee and the interim report of its advisors, the Board of Directors has determined, on a preliminary basis, that primarily related to long term take-or-pay arrangements:
>
> - approximately $95 million to $106 million (subject to detailed quantification by the Company) of the Company's $148.1 million in revenue for the 9 months ended September 30, 2012 should not have been recorded as revenue in the Company's financial statements; and

> - as a result of recording the foregoing revenues, approximately $94 million to $102 million (subject to detailed quantification by the Company) of the Company's $125.5 million accounts receivable as at September 30, 2012 should not have been recorded in the Company's financial statements as accounts receivable.
>
> As a result of the foregoing, the first, second and third quarter 2012 financial statements (the "Financial Statements") will be restated and the Company advises investors that they should no longer rely on the Financial Statements as well as the corresponding Management's Discussion & Analysis. Further, the Company advises that all previous guidance with respect to the Company's business should no longer be relied upon.

60. The February 14, 2013 press release also stated that Poseidon's financial statements for the first three quarters of 2012 did not comply with IFRS or with Poseidon's own accounting policies. That press release additionally stated that the need for the restatement was " "primarily related to [the Company's] long term take-or-pay arrangements."

61. In reaction to the Company's disclosure on February 14, 2013, the Company's stock fell $0.61 per share or approximately 69%, from its previous closing price, to close at $0.28 per share.

**<u>PLAINTIFF'S CLASS ACTION ALLEGATIONS</u>**

62. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all persons who purchased the common stock of Poseidon during the Class Period and who were damaged thereby. Excluded from the Class are Defendants, the present and former officers and directors of Poseidon and any subsidiary thereof, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

63. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Poseidon's stock was actively traded on the OTC Pink Sheets.

64. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds, if not thousands, of members in the proposed Class. Members of the Class may be identified from records maintained by Poseidon or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

65. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

66. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

67. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a. whether the federal securities laws were violated by Defendants' acts as alleged herein;

b. whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, and financial performance of Poseidon; and

c. to what extent the members of the Class have sustained damages and the proper measure of damages.

68. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

69. At all relevant times, the market for Poseidon common stock was an efficient market for the following reasons, among others:

a. Posedion's stock listed on the Toronto stock exchange traded on an efficient market and the common stock in this action tracked the movements of the Toronto stock;

b. During the Class Period, on average 6,073,232 shares of Poseidon were traded on a weekly basis among the Toronto Stock Exchange and the OTC Pink marketplace. During the Class Period, approximately 81 million shares were outstanding.[2] Approximately 7.5% of all outstanding shares were bought and sold on a weekly basis, demonstrating a very strong presumption of an efficient market;

c. Poseidon regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

[2] In its Q3 2012 MD&A filed on SEDAR on November 14, 2012, the Company stated for the three months ended September 30, 2012, the Company had a weighted average basic of approximately 81,097,000 basic common shares outstanding.

d. Poseidon was followed by several securities analysts employed by major brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace;

e. Numerous FINRA member firms were active market-makers in Poseidon at all times during the Class Periods; and

f. Unexpected material news about Poseidon was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

**FIRST CAUSE OF ACTION**
**Violation of Section 10(b) of The Exchange Act Against and Rule 10b-5**
**Promulgated Thereunder Against Poseidon Michaluk, and MacKenzie**

70. Plaintiff incorporates ¶¶1-69 as if fully set forth herein.

71. This cause of action is asserted against all Defendants.

72. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase and/or sell Poseidon's securities at artificially inflated and distorted prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, individually and as a group, took the actions set forth herein.

73. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Poseidon as specified herein.

74. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a

course of conduct as alleged herein in an effort to assure investors of Poseidon's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Poseidon and its business operations and financial condition in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Poseidon securities during the Class Period.

75. Each of the Defendants' primary liability, and controlling person liability, arises from the following: (a) Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (b) by virtue of their responsibilities and activities as senior officers and/or directors of the Company, were privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (c) Defendants enjoyed significant personal contact and familiarity with the other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and (d) Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

76. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Poseidon's financial condition from the investing

public and supporting the artificially inflated price of its securities. As demonstrated by defendants' false and misleading statements during the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by failing to take steps necessary to discover whether those statements were false or misleading.

77. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price for Poseidon's securities was artificially inflated during the Class Period.

78. In ignorance of the fact that market prices of Poseidon's publicly-traded securities were artificially inflated or distorted, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the Company's securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Poseidon's securities during the Class Period at artificially high prices and were damaged thereby.

79. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Poseidon's financial results and condition, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired Poseidon securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

80. By virtue of the foregoing, the Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

81. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

82. This action was filed within two years of discovery of the fraud and within five years of Plaintiff"s purchases of securities giving rise to the cause of action.

**SECOND CAUSE OF ACTION**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

83. Plaintiff incorporates ¶¶1-82 as if fully set forth herein.

84. This second cause of action is asserted against each of the Individual Defendants.

85. The Individual Defendants acted as controlling persons of Poseidon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of aspects of the Company's revenues and earnings and dissemination of information to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

86. In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

87. As set forth above, Poseidon violated Section 10(b) and Rule 10b-5 by their acts and Poseidon as alleged in this Complaint.

88. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

89. This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action and certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

b. Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d. Awarding Plaintiffs such other and further relief as the Court may deem just and proper.

Dated: June 14, 2013

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

Timothy W. Brown, Esq. (TB 1008)
tbrown@rosenlegal.com
Laurence M. Rosen, Esq. (LR5733)
lrosen@rosenlegal.com
Phillip Kim, Esq. (PK 9384)
pkim@rosenlegal.com
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 34th Floor
New York, NY, 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827