# EXHIBIT 2

| | | | |
|---|---|---|---|
| COURT FILE NUMBER | | | Clerk's Stamp |
| COURT | COURT OF QUEEN'S BENCH OF ALBERTA | | |
| JUDICIAL CENTRE | CALGARY | | |
| APPLICANTS | **IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED** | | |
| | **AND IN THE MATTER OF POSEIDON CONCEPTS CORP., POSEIDON CONCEPTS LTD., POSEIDON CONCEPTS LIMITED PARTNERSHIP AND POSEIDON CONCEPTS INC.** | | |
| DOCUMENT | **CCAA INITIAL ORDER** | | |
| ADDRESS FOR SERVICE AND CONTACT INFORMATION OF PARTY FILING THIS DOCUMENT | Norton Rose Canada LLP 3700 Devon Tower 400 Third Avenue SW Calgary, Alberta T2P 4H2 Phone: 403-267-8222 Fax:    403-264-5973 Attention: Howard A. Gorman File No. 01024529-0001 | | |

I hereby certify this to be a true copy of the original _____ ORDER

Dated this _9_ day of _APRIL_ 2013

_____
for Clerk of the Court

**DATE ON WHICH ORDER WAS PRONOUNCED:**      April 9, 2013

**NAME OF JUDGE WHO MADE THIS ORDER:**      The Honourable Mr. Justice K.D. Yamauchi

**LOCATION OF HEARING:**      Calgary

UPON the application of Poseidon Concepts Corp., Poseidon Concepts Ltd., Poseidon Concepts Limited Partnership, and Poseidon Concepts Inc. (the "Applicants"); **AND UPON** having read the Originating Application and the Affidavit of Leigh Cassidy, filed; **AND UPON** reading the consent of PricewaterhouseCoopers Inc. ("PwC") to act as Monitor and upon noting

- 2 -

that the secured creditors who are likely to be affected by the charges created herein have been provided notice of this application and either do not oppose or alternatively consent to the within Order; **AND UPON** hearing counsel for the Applicants and counsel for the Applicants' secured lenders (the "Lending Syndicate"); **AND UPON HEARING** that The Toronto-Dominion Bank, as agent for itself and HSBC Bank Canada, The Bank of Nova Scotia, and National Bank of Canada (the "Lending Syndicate"), has provided the Applicants with their primary credit facility, a first charge loan facility currently owed approximately $80 million pursuant to a Credit Agreement among the Lending Syndicate and the Applicants dated June 29, 2012; **IT IS HEREBY ORDERED AND DECLARED THAT:**

## SERVICE

1.     The time for service of the notice of application for this order is hereby abridged and deemed good and sufficient and this application is properly returnable today.

## APPLICATION

2.     The Applicants, other than Poseidon Concepts Limited Partnership (the "Partnership") are companies to which the CCAA applies, with offices in Alberta or the United States, with assets or holdings in Alberta, British Columbia and the United States and/or are affiliates of such companies, all of whom have their directing mind in Calgary, Alberta.

2 (a)   The Partnership is also a proper party and included as an Applicant to these proceedings and entitled to the relief set out herein.

## PLAN OF ARRANGEMENT

3.     The Applicants shall have the authority to file and may, subject to further order of this Court, file with this Court a plan of compromise or arrangement (hereinafter referred to as the "Plan").

## POSSESSION OF PROPERTY AND OPERATIONS

4.     The Applicants shall:

- 3 -

    (a)    remain in possession and control of their current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the "Property");

    (b)    subject to further order of this Court, continue to carry on business in a manner consistent with the preservation of their business (the "Business") and Property;

    (c)    be authorized and empowered to continue to retain and employ the employees, consultants, agents, experts, accountants, counsel and such other persons (collectively "Assistants") currently retained or employed by it, with liberty to retain such further Assistants as it deems reasonably necessary or desirable in the ordinary course of business or for the carrying out of the terms of this Order; and

    (d)    be authorized to make inter-company transfers and advances to pay costs, expenses and amounts otherwise authorized herein.

5.    To the extent permitted by law, the Applicants shall be entitled but not required to pay the following expenses, incurred prior to or after this Order:

    (a)    all outstanding and future wages, salaries, employee and pension benefits, vacation pay and expenses payable on or after the date of this Order, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements; and

    (b)    the fees and disbursements of any Assistants retained or employed by the Applicants in respect of these proceedings, at their standard rates and charges.

6.    Except as otherwise provided to the contrary herein, the Applicants shall be entitled but not required to pay all reasonable expenses incurred by the Applicants in carrying on the Business in the ordinary course after this Order, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

    (a)    all expenses and capital expenditures reasonably necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors and officers insurance), maintenance and security services; and

- 4 -

(b)     payment for goods or services actually supplied to the Applicants following the date of this Order.

7.      The Applicants shall remit, in accordance with legal requirements, or pay:

(a)     any statutory deemed trust amounts in favour of the Crown in Right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from employees' wages, including, without limitation, amounts in respect of:

   (i)    employment insurance,

   (ii)   Canada Pension Plan, and

   (iv)   income taxes,

   but only where such statutory deemed trust amounts arise after the date of this Order, or are not required to be remitted until after the date of this Order, unless otherwise ordered by the Court;

(b)     all goods and services or other applicable sales taxes (collectively, "Sales Taxes") required to be remitted by the Applicants in connection with the sale of goods and services by the Applicants, but only where such Sales Taxes are accrued or collected after the date of this Order, or where such Sales Taxes were accrued or collected prior to the date of this Order but not required to be remitted until on or after the date of this Order; and

(c)     any amount payable to the Crown in Right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal realty, municipal business or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors and which are attributable to or in respect of the carrying on of the Business by the Applicants.

8.      Until a real property lease is disclaimed or resiliated in accordance with the CCAA, the Applicants may pay all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and

- 5 -

realty taxes and any other amounts payable as rent to the landlord under the lease) based on the terms of existing lease arrangements or as otherwise may be negotiated by the Applicants from time to time for the period commencing from and including the date of this Order ("Rent"), but shall not pay any rent in arrears.

9.   Except as specifically permitted in this Order, the Applicants are hereby directed, until further order of this Court:

    (a)   to make no payments of principal, interest thereon or otherwise on account of amounts owing by the Applicants to any of its creditors as of the date of this Order;

    (b)   to grant no security interests, trust, liens, charges or encumbrances upon or in respect of any of their Property; and

    (c)   not to grant credit or incur liabilities except in the ordinary course of the Business.

**RESTRUCTURING**

10.   The Applicants shall subject to such requirements as are imposed by the CCAA and such covenants as may be contained in the Definitive Documents (as hereinafter defined in paragraph 33), have the right to:

    (a)   subject to the prior approval of the Lending Syndicate, permanently or temporarily cease, downsize or shut down any of its business or operations and to dispose of redundant or non-material assets not exceeding $500,000 in any one transaction or $2,000,000 in the aggregate, provided that any sale that is either (i) in excess of the above thresholds, or (ii) in favour of a person related to the Applicants (within the meaning of section 36(5) of the CCAA), shall require authorization by this Court in accordance with section 36 of the CCAA;

    (b)   terminate the employment of such of its employees or temporarily lay off such of its employees as they deem appropriate on such terms as may be agreed upon between the Applicants and such employee, or failing such agreement, to deal with the consequences thereof in the Plan; and

- 6 -

(c)     pursue all avenues of refinancing of their Business or Property, in whole or part, subject to prior approval of this Court being obtained before any material refinancing,

all of the foregoing to permit the Applicants to proceed with an orderly restructuring of the Business (the "Restructuring").

11.     The Applicants shall provide each of the relevant landlords with notice of the Applicants' intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal.  The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal.  If the landlord disputes the Applicants' entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors, such landlord and the Applicants, or by further order of this Court upon application by the Applicants on at least two (2) days' notice to such landlord and any such secured creditors. If the Applicants disclaim or resiliate the lease governing such leased premises in accordance with section 32 of the CCAA, they shall not be required to pay Rent under such lease pending resolution of any such dispute (other than Rent payable for the notice period provided for in section 32(5) of the CCAA) and the disclaimer or resiliation of the lease shall be without prejudice to the Applicants' claim to the fixtures in dispute.

12.     If a notice of disclaimer or resiliation is delivered pursuant to section 32 of the CCAA, then:

(a)     during the notice period prior to the effective time of the disclaimer or resiliation, the landlord may show the affected leased premises to prospective tenants during normal business hours, on giving the Applicants and the Monitor 24 hours' prior written notice; and

(b)     at the effective time of the disclaimer or resiliation, the relevant landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims or rights such landlord may have against the Applicants in respect of such lease or leased premises and such landlord shall be entitled to

- 7 -

notify the Applicants of the basis on which it is taking possession and to gain possession of and re-lease such leased premises to any third party or parties on such terms as such landlord considers advisable, provided that nothing herein shall relieve such landlord of its obligation to mitigate any damages claimed in connection therewith.

**NO PROCEEDINGS AGAINST THE APPLICANTS OR THE PROPERTY**

13. Until and including May 9, 2013, or such later date as this Court may order (the "Stay Period"), no proceeding or enforcement process in any court (each, a "Proceeding") shall be commenced or continued against or in respect of the Applicants or the Monitor, or affecting the Business or the Property, except with leave of this Court, and any and all Proceedings currently under way against or in respect of the Applicants or affecting the Business or the Property are hereby stayed and suspended pending further order of this Court.

**NO EXERCISE OF RIGHTS OR REMEDIES**

14. During the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "Persons" and each being a "Person"), whether judicial or extra-judicial, statutory or non-statutory against or in respect of the Applicants or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended and shall not be commenced, proceeded with or continued except with leave of this Court, provided that nothing in this Order shall:

    (a)    empower the Applicants to carry on any business which the Applicants are not lawfully entitled to carry on;

    (b)    affect such investigations, actions, suits or proceedings by (i) a regulatory body as are permitted by section 11.1 of the CCAA or (ii) by the Lending Syndicate;

    (c)    prevent the filing of any registration to preserve or perfect a security interest; or

    (d)    prevent the registration of a claim for lien.

- 8 -

15.   Nothing in this Order shall prevent any party from taking an action against the Applicants where such an action must be taken in order to comply with statutory time limitations in order to preserve their rights at law, provided that no further steps shall be taken by such party except in accordance with the other provisions of this Order, and notice in writing of such action be given to the Monitor at the first available opportunity.

## NO INTERFERENCE WITH RIGHTS

16.   During the Stay Period, no person shall accelerate, suspend, discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Applicants, except with the written consent of the Applicants and the Monitor, or leave of this Court.

## CONTINUATION OF SERVICES

17.   During the Stay Period, all persons having:

     (a)   statutory or regulatory mandates for the supply of goods and/or services; or

     (b)   oral or written agreements or arrangements with the Applicants, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation, services, utility or other services to the Business or the Applicants

are hereby restrained until further Order of this Court from discontinuing, altering, interfering with, suspending or terminating the supply of such goods or services as may be required by the Applicants or exercising any other remedy provided under such agreements or arrangements.  The Applicants shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the usual prices or charges for all such goods or services received after the date of this Order are paid by the Applicants in accordance with the payment practices of the Applicants, or such other practices as may be agreed upon by the supplier or service provider and each of the Applicants and the Monitor, or as may be ordered by this Court.  Nothing in this Order has the effect of prohibiting a person from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided on or after the date of this Order.

- 9 -

## NO OBLIGATION TO ADVANCE MONEY OR EXTEND CREDIT

18.     Notwithstanding anything else contained in this Order, no creditor of the Applicants shall be under any obligation on or after the date of this Order to advance or re-advance any monies or otherwise extend any credit to the Applicants.

## PROCEEDINGS AGAINST DIRECTORS AND OFFICERS

19.     During the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA and paragraph 15 of this Order, no Proceeding may be commenced or continued against any of the former, current or future directors or officers of the Applicants with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of the Applicants whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Applicants, if one is filed, is sanctioned by this Court or is refused by the creditors of the Applicants or this Court.

## DIRECTORS' AND OFFICERS' INDEMNIFICATION AND CHARGE

20.     The Applicants shall indemnify its directors and officers against obligations and liabilities that they may incur as directors and or officers of the Applicants after the commencement of the within proceedings except to the extent that, with respect to any officer or director, the obligation was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

21.     The directors and officers of the Applicants shall be entitled to the benefit of and are hereby granted a charge (the "Directors' Charge") on the Property, which charge shall not exceed an aggregate amount of $1,000,000, as security for the indemnity provided in paragraph 20 of this Order.  The Directors' Charge shall have the priority set out in paragraphs 43 and 45 herein.  For greater certainty, payments under the New KERP are included under the Directors' Charge.

- 10 -

22.   Notwithstanding any language in any applicable insurance policy to the contrary:

    (a)   no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge; and

    (b)   the Applicants' directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 21 of this Order.

## APPOINTMENT OF MONITOR

23.   PwC is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the Property, Business and financial affairs and the Applicants with the powers and obligations set out in the CCAA or set forth herein and that the Applicants and their shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Applicants pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

24.   The Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

    (a)   monitor the Applicants' receipts and disbursements, Business and dealings with the Property and approve all expenditures that are greater than $10,000 or in relation to the movement of tanks;

    (b)   report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein and immediately report to the Court if in the opinion of the Monitor there is a material adverse change in the financial circumstances of the Applicants;

    (c)   assist the Applicants, to the extent required by the Applicants, in its dissemination to the Interim Lender and its counsel on a regular basis of financial and other

- 11 -

information as agreed to between the Applicants and the Interim Lender which may be used in these proceedings, including reporting on a basis as reasonably required by the Interim Lender;

(d)    advise the Applicants in its preparation of the Applicants' cash flow statements and reporting required by the Interim Lender, which information shall be reviewed with the Monitor and delivered to the Interim Lender and its counsel on a periodic basis;

(e)    advise the Applicants in its development of the Plan and any amendments to the Plan;

(f)    advise the Applicants, to the extent required by the Applicants, with the holding and administering of creditors' or shareholders' meetings for voting on the Plan;

(g)    have full and complete access to the Property, including the premises, books, things, records, papers, data, including data in electronic form, CD, DVDs, discs, computer records, hard drives, USB storage devices, cloud storage or any other medium that may contain information (collectively "Information") and other financial documents of the Applicants to the extent that is necessary to adequately assess the Applicants' Property, Business and financial affairs or to perform its duties arising under this Order and to ensure that the Information is preserved and maintained;

(h)    be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order;

(i)    hold funds in trust or in escrow, to the extent required, to facilitate settlements between the Applicants and any other Person;

(j)    report to, and respond to inquiries of the Lending Syndicate with respect to the CCAA proceedings but not any ongoing or future litigation involving the Lending Syndicate with or without the presence or the consent of the Applicants, however copies of any written reports shall be provided to the Applicants;

- 12 -

(k)     apply, or assist the Applicants in applying to have the Order and these proceedings recognized in the United States with all necessary amendments; and

(l)     perform such other duties as are required by this Order or by this Court from time to time.

25.    The Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, or by inadvertence in relation to the due exercise of powers or performance of duties under this Order, be deemed to have taken or maintain possession or control of the Business or Property, or any part thereof. Nothing in this Order shall require the Monitor to occupy or to take control, care, charge, possession or management of any of the Property that might be environmentally contaminated, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal or waste or other contamination, provided however that this Order does not exempt the Monitor from any duty to report or make disclosure imposed by applicable environmental legislation.

26.    The Monitor shall provide any creditor of the Applicants and the Interim Lender with information provided by the Applicants in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by the Applicants are confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Applicants may agree.

27.    The Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the protections afforded the Monitor by the CCAA or any applicable legislation.

- 13 -

28.     The Monitor, counsel to the Monitor and counsel to the Applicants shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, by the Applicants as part of the costs of these proceedings.   The Applicants are hereby authorized and directed to pay the accounts of the Monitor, counsel for the Monitor and counsel for the Applicants on a regular basis.

29.     The Monitor and its legal counsel shall pass their accounts from time to time.

30.     The Monitor, counsel to the Monitor, if any, and the Applicants' counsel, as security for the professional fees and disbursements incurred both before and after the granting of this Order, shall be entitled to the benefits of and are hereby granted a charge (the "Administration Charge") on the Property, which charge shall not exceed an aggregate amount of $1,000,000, as security for their professional fees and disbursements incurred at the normal rates and charges of the Monitor, Whitewater Inc., TWM, EYO and the Monitor's and the Applicant's counsel, both before and after the making of this order in respect of these proceedings.  The Administration Charge shall have the priority set out in paragraphs 43 and 45 hereof.

**INTERIM FINANCING**

31.     The Applicants are hereby authorized and empowered to obtain and borrow under a interim financing facility from Century Services LP (the "Interim Lender") in order to finance the Applicants' working capital requirements and other general corporate purposes and capital expenditures, provided that borrowings under such credit facility shall not exceed $6,000,000 unless permitted by further order of this Court of which not more than the principal of $3,000,000 may be borrowed by the Applicants without the approval of the Lending Syndicate.

32.     Such credit facility shall be on the terms and subject to the conditions set forth in the commitment letter between PSN and the Interim Lender dated as of April 9, 2013 (the "Commitment Letter"), filed.

33.     The Applicants are hereby authorized and empowered to execute and deliver such credit agreements, mortgages, charges, hypothecs and security documents, guarantees and other

- 14 -

definitive documents (collectively, the "Definitive Documents"), as are contemplated by the Commitment Letter or as may be reasonably required by the Interim Lender pursuant to the terms thereof, and the Applicants are hereby authorized and directed to pay and perform all of its indebtedness, interest, fees, liabilities and obligations to the Interim Lender under and pursuant to the Commitment Letter and the Definitive Documents as and when the same become due and are to be performed, notwithstanding any other provision of this Order.

34.     The Interim Lender shall be entitled to the benefits of and is hereby granted a charge (the "Interim Lender's Charge") on the Property to secure all obligations under the Commitment Letter and the Definitive Documents incurred on or after the date of this Order which charge shall not exceed the aggregate amount advanced on or after the date of this Order plus any costs, fees or interest under the Commitment Letter or under the Definitive Documents.  The Interim Lender's Charge shall have the priority set out in paragraphs 43 and 45 hereof.

35.     Notwithstanding any other provision of this Order:

(a)     the Interim Lender may take such steps from time to time as it may deem necessary or appropriate to file, register, record or perfect the Interim Lender's Charge or any of the Definitive Documents;

(b)     upon the occurrence of an event of default under the Commitment Letter, the Definitive Documents or the Interim Lender's Charge, the Interim Lender may, in its sole discretion, immediately cease making advances to the Applicants, and upon two days' notice to the Applicants, the Lending Syndicate and the Monitor, may exercise any and all of its rights and remedies against the Applicants or the Property under or pursuant to the Commitment Letter, Definitive Documents and the Interim Lender's Charge, including without limitation, to set off and/or consolidate any amounts owing by the Interim Lender to the Applicants against the obligations of the Applicants to the Interim Lender under the Commitment Letter, the Definitive Documents or the Interim Lender's Charge, to make demand, accelerate payment and give other notices, or to apply to this Court for

- 15 -

the appointment of a receiver, receiver and manager or interim receiver, or for a bankruptcy order against the Applicants and for the appointment of a trustee in bankruptcy of the Applicants; and

(c)    the foregoing rights and remedies of the Interim Lender shall be enforceable against any trustee in bankruptcy, interim receiver, receiver or receiver and manager of the Applicants or the Property.

36.    The Interim Lender shall be treated as unaffected in any plan of arrangement or compromise filed by the Applicants under the CCAA, or any proposal filed by the Applicants under the *Bankruptcy and Insolvency Act* of Canada (the "BIA"), with respect to any advances made under the Definitive Documents.

## KEY EMPLOYEE RETENTION PLAN

37.    The New Key Employee Retention Plan ("New KERP"), as more fully described in the Originating Application, and the amounts of the retention bonus payments under the New KERP as described in the Originating Application are hereby approved and ratified and the Applicant is hereby authorized and directed to implement and perform its obligations under the New KERP in accordance with the terms of the New KERP and as same may be modified by this Order, and to execute and deliver such additional or auxiliary documents as may be necessary to give effect to the New KERP.

38.    The employees of the Applicant entitled to participate in the New KERP shall be entitled to the benefit of the Directors' Charge.

## TOTAL WATER MANAGEMENT LLC ("TWM")

39.    The entering into of the TWM Services Agreement as more fully described in and attached to the Originating Application be and is hereby authorized and approved. The applicants are directed to carry out and perform their obligations thereunder (including payment of amounts due to be paid) and the TWM Services Agreement shall be binding upon the applicants.

40.    Payments to be paid to TWM under the TWM Services Agreement shall be included in and served by the Administration Charge.

- 16 -

## SOLICITATION PROCESS

41.     The entering into of the engagement letter ("Engagement Letter") with Ernst & Young
        Orenda Corporate Finance Inc. ("EYO") as more fully described in the Originating
        Application be and is hereby authorized, *nunc pro tunc*. The Applicants' are directed to
        carry out and perform their obligations thereunder (including payment of amounts due to
        be paid pursuant to the terms of the Engagement Letter) and the Engagement Letter shall
        be binding upon the Applicants.

42.     The Applicants are authorized to undertake the Solicitation Process (as defined and more
        fully described in the Originating Application) to fully canvass opportunities to sell,
        restructure or recapitalize the Applicants' business subject to final Court approval.

## VALIDITY AND PRIORITY OF CHARGES

43.     The priorities of the Directors' Charge, the Administration Charge and the Interim
        Lender's Charge, as among them, shall be as follows:

        First – Administration Charge (to the maximum amount of $1,000,000); and

        Second – Directors' Charge (to the maximum of $1,000,000)

        Third – Interim Lender's Charge.

44.     The filing, registration or perfection of the Directors' Charge, the Administration Charge
        or the Interim Lender's Charge (collectively, the "Charges") shall not be required, and the
        Charges shall be valid and enforceable for all purposes, including as against any right,
        title or interest filed, registered, recorded or perfected subsequent to the Charges coming
        into existence, notwithstanding any such failure to file, register, record or perfect.

45.     Each of the Directors' Charge, the Administration Charge and the Interim Lender's
        Charge (all as constituted and defined herein) shall constitute a charge on the Property
        and subject always to section 34(11) of the CCAA such Charges shall rank in priority to
        all other security interests, trusts, liens, charges and encumbrances, claims of secured
        creditors, statutory or otherwise (collectively, "Encumbrances") in favour of any Person.

- 17 -

46.  Notwithstanding anything to the contrary in this Order, the Property that is subject to the Charges shall not comprise any securities, insurance (other than property insurance related to specific chattels), or litigation claims that the Applicants, or parties claiming through the Applicants, may have as against third parties.

47.  Except as otherwise expressly provided for herein, or as may be approved by this Court, the Applicants shall not grant any Encumbrances over any Property that rank in priority to, or *pari passu* with, any of the Directors' Charge, the Administration Charge or the Interim Lender's Charge, unless the Applicants also obtain the prior written consent of the Monitor, the Interim Lender and the beneficiaries of the Directors' Charge and the Administration Charge, or further order of this Court.

48.  The Directors' Charge, the Administration Charge, the Commitment Letter, the Definitive Documents and the Interim Lender's Charge shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "Chargees") and/or the Interim Lender thereunder shall not otherwise be limited or impaired in any way by:

   (a)  the pendency of these proceedings and the declarations of insolvency made in this Order;

   (b)  any application(s) for bankruptcy order(s) issued pursuant to BIA, or any bankruptcy order made pursuant to such applications;

   (c)  the filing of any assignments for the general benefit of creditors made pursuant to the BIA;

   (d)  the provisions of any federal or provincial statutes; or

   (e)  any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, sublease, offer to lease or other agreement (collectively, an "Agreement") which binds the Applicants, and notwithstanding any provision to the contrary in any Agreement:

- 18 -

(i)     neither the creation of the Charges nor the execution, delivery, perfection, registration or performance of any documents in respect thereof, including the Commitment Letter or the Definitive Documents, shall create or be deemed to constitute a new breach by the Applicants of any Agreement to which they are a party;

(ii)    none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the creation of the Charges, or the Applicants entering into the Commitment Letter, or execution, delivery or performance of the Definitive Documents; and

(iii)   the payments made by the Applicants pursuant to this order, including the Commitment Letter or the Definitive Documents, and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct or other challengeable or voidable transactions under any applicable law.

## ALLOCATION

49.    Any interested Person may apply to this Court on notice to any other party likely to be affected, for an order to allocate the Administration Charge, the Interim Lender's Charge and the Directors' Charge amongst the various assets comprising the Property.

## SERVICE AND NOTICE

50.    The Monitor shall (i) without delay, publish in the Calgary Herald a notice containing the information prescribed under the CCAA; (ii) within five (5) days after the date of this Order (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, in the prescribed manner, a notice to every known creditor who has a claim against the Applicants of more than $1,000 and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with section 23(1)(a) of the CCAA and the regulations made thereunder.

- 19 -

51.    The Applicants and the Monitor shall be at liberty to serve this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery, facsimile transmission or e-mail to the Applicants' creditors or other interested Persons at their respective addresses as last shown on the records of the Applicants and that any such service or notice by courier, personal delivery, facsimile transmission or e-mail shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.  The Monitor shall establish and maintain a website in respect of these proceedings at www.pwc.com/car-poseidon and shall post there as soon as practicable:

(a)    all materials prescribed by statue or regulation to be made publically available; and

(b)    all applications, reports, affidavits, orders or other materials filed in these proceedings by or behalf of the Monitor, or served upon it, except such materials as are confidential and the subject of a sealing order or pending application for a sealing order.

**GENERAL**

52.    The Applicants or the Monitor may from time to time apply to this Court for advice and directions in the discharge of its powers and duties hereunder.

53.    Notwithstanding Rule 6.11 of the *Alberta Rules of Court*, unless otherwise ordered by this Court, the Monitor will report to the Court from time to time, which reporting is not required to be in affidavit form and shall be considered by this Court as evidence.

54.    Nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Applicants, the Business or the Property.

55.    This Court hereby requests the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in

- 20 -

carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

56.  Each of the Applicants and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order and that the Monitor is authorized and empowered to act as a representative in respect of the within proceeding for the purpose of having these proceedings recognized in a jurisdiction outside Canada.

57.  Any interested party (including the Applicants and the Monitor) may apply to this Court to vary or amend this Order on not less than seven (7) days' notice to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

58.  This Order and all of its provisions are effective as of 12:01 a.m. Mountain Daylight Time on the date of this Order.

K.D. Yamauchi

Justice of the Court of Queen's Bench of Alberta